FILED
Western District of Washington
at Tacoma

OCT 16 2023

GINA ZADRA WALTON, CLERK
OF THE BANKRUPTCY COURT

**Fill in this information to identify your case:**

Debtor 1: Ryan Lynn Ricks

Debtor 2 (Spouse, if filing): Carly Nicole Ford

United States Bankruptcy Court for the: Western District of Washington

Case number (If known): 23-41438-BDL

*Corolla*

# Official Form 427
## Cover Sheet for Reaffirmation Agreement  12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
Fibre Federal Credit Union
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed   $ 19,450.15
To be paid under the reaffirmation agreement   $ 19,450.15
$ 315.72 per month for 70 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed   3.99 %
Under the reaffirmation agreement   3.99 %  ☑ Fixed rate  ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes. Describe the collateral.   2021 Toyota Corolla JTDEAMDE9NJ055399
Current market value   $ 23,525.00

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J:

6a. Combined monthly income from line 12 of Schedule I   $5614.62

6b. Monthly expenses from line 22c of Schedule J   $5577.66

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   −$ 0

6d. Scheduled net monthly income   $ 36.96
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement:

6e. Monthly income from all sources after payroll deductions   $5614.62

6f. Monthly expenses   −$5577.66

6g. Monthly payments on all reaffirmed debts not included in monthly expenses   −$ 0

6h. Present net monthly income   $ 36.96
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Debtor 1 __Ryan Lynn Ricks__  Case number (if known) 23-41438-BDL
First Name   Middle Name   Last Name

7. Are the income amounts on lines 6a and 6e different?
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

8. Are the expense amounts on lines 6b and 6f different?
☒ No
☐ Yes. Explain why they are different and complete line 10. _____

9. Is the net monthly income in line 6h less than 0?
☒ No
☐ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

10. Debtor's certification about lines 7-9

If any answer on lines 7-9 is Yes, the debtor must sign here.

If all the answers on lines 7-9 are No, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

X _____     X _____
Ryan Lynn Ricks (Oct 3, 2023 17:29 PDT)   Carly Nicole Ford (Oct 3, 2023 17:36 PDT)
Signature of Debtor 1              Signature of Debtor 2 (Spouse Only in a Joint Case)

11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?
☐ No
☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
  ☐ No
  ☒ Yes

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement.

X _____   Date 10/11/2023
Signature                        MM/DD/YYYY

Lisa Bates - Member Solutions Assoc.
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Form 2400A (12/15)

> Check one.
> ☐ Presumption of Undue Hardship
> ☑ No Presumption of Undue Hardship
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Western District of Washington

In re Ryan Lynn Ricks
Carly Nicole Ford
_____,
*Debtor*

Case No. 23-41438-BDL

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Fibre Federal Credit Union

☑ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Auto Loan
*For example, auto loan*

B. *AMOUNT REAFFIRMED:* $ 19,450.15

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 09/26/2023, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 3.9900 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

[✓] $ 315.72 per month for 70 months starting on 09/29/2023.

[ ] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

Description: 2021 Toyota Corolla
Current Market Value $ 23,525.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

[✓] Yes. What was the purchase price for the collateral? $ 23,067.17

[ ] No. What was the amount of the original loan? $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 19,450.15 | $ 19,450.15 |
| Annual Percentage Rate | 3.9900 % | 3.9900 % |
| Monthly Payment | $ 315.72 | $ 315.72 |

H. [ ] Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one. [✓] Yes [ ] No

B. Is the creditor a credit union?

Check one. [✓] Yes [ ] No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income)                                    $_____

    b. Monthly expenses (including all reaffirmed debts except
    this one)                                                                $_____

    c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $_____

    d. Amount of monthly payment required for this reaffirmed debt           $_____

    *If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    ☑ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  Oct 3, 2023　　Signature  _Ryan Lynn Ricks (Oct 3, 2023 17:29 PDT)_
　　　　　　　　　　　　　　　　　　　　　　　　　　　Debtor

Date  Oct 3, 2023　　Signature  _____
　　　　　　　　　　　　　　　　　　　　　　　　　Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Fibre Federal Credit Union　　　　Po Box 1234 Longview, WA 98632
　　　　　　　　_Print Name_　　　　　　　　　　　　　　　　_Address_

_Lisa Bates_　　　　　　　　　　　　　　_[signature]_　　　　　10/11/23
　　_Print Name of Representative_　　　　　　_Signature_　　　　　　_Date_

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date  10/3/23　　Signature of Debtor's Attorney  _____

　　　　　　　　　Print Name of Debtor's Attorney  Ellen Brown

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

C.  **DEFINITIONS**

   1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

   2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

   3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# KBB Used Car Guide

**Vehicle Selection**

Version Date: 9/26/2023   Zip: 98632   Condition: Good   Mileage: 30000

VIN: JTDEAMDE9NJ055399   [Populate Vehicle Info]

Year: 2022   Make: Toyota   Model: Corolla Hybrid

**Trim**

| Desc | Transmission | Engine | Drive |
|---|---|---|---|
| [Show Option] LE Sedan 4D Corolla Hybrid | Automatic, ECVT | 4-Cyl, Hybrid, 1.8 Liter | FWD |

**Engine, Transmission, Drive**

Engine: 4-Cyl, Hybrid, 1.8 Liter #   Transmission: Automatic, ECVT #   Drive: FWD #

**Options**

- ☐ Preferred Accessory Pkg
- ☐ Blind-Spot Monitor
- ☑ Hill Start Assist Control #
- ☑ Traction Control #
- ☑ Stability Control #
- ☑ Vehicle Dynamic Control #
- ☑ ABS (4-Wheel) #
- ☑ Keyless Entry #
- ☑ Push Button Start #
- ☑ Air Conditioning #
- ☑ Power Windows #
- ☑ Power Door Locks #
- ☑ Dynamic Cruise Control #
- ☑ Power Trunk Release #
- ☑ Electric Power Steering #
- ☑ Tilt & Telescoping Wheel #
- ☑ AM/FM Stereo #
- ☑ SiriusXM Satellite #
- ☑ Bluetooth Wireless #
- ☑ Safety Connect #
- ☑ Backup Camera #
- ☑ Dual Air Bags #
- ☑ F&R Side Air Bags #
- ☑ F&R Head Curtain Air Bags #
- ☑ Knee Air Bags #
- ☑ Lane Departure Warning System #
- ☐ Heated Seats
- ☐ Power Seat
- ☐ Leather
- ☑ Daytime Running Lights #
- ☑ LED Headlamps #
- ☑ Alloy Wheels #
- ☐ Premium Wheels
- ☐ Premium Wheels 19"+
- ☐ Red
- ☐ Silver
- ☐ Gray
- ☐ Blue
- ☐ White
- ☐ Black

# = Default Configuration

**Value**

| | MSRP | Wholesale | Retail | Trade-In | Private Party | Auction | CPO |
|---|---|---|---|---|---|---|---|
| Base | $24,745 | $25,279 | $27,119 | $22,356 | $24,479 | $23,525 | $27,664 |
| Adjusted | $24,745 | $25,024 | $26,864 | $22,356 | $24,479 | $23,525 | $27,664 |

[Get Value]   [Print] [Close]

SIMPLE INTEREST - OREGON

Genuine Forms Online @ flywheelnw.com  077-302-OADA

# RETAIL INSTALLMENT CONTRACT

Dealer Number DAQ190   Contract Number T22463   Date 04/14/22

| Buyer Name and Address (Include County and Zip Code) | Co-Buyer Name and Address (Include County and Zip Code) | Creditor-Seller Name and Address |
|---|---|---|
| RYAN LYNN RICKS<br>577 24TH AVE<br>LONGVIEW, WA 98632<br>COWLITZ | CARLY NICOLE FORD<br>577 24TH AVE<br>LONGVIEW, WA 98632<br>COWLITZ | LUM'S AUTO CENTER, INC.<br>1605 SE Ensign Ln<br>Warrenton, OR 97146<br>N/A |

By signing this contract, I am buying the Property described below from you, the Creditor/Seller indicated above, and I agree to the terms stated on the front and back of this contract, including those stated in the Federal Truth-In-Lending Disclosures.

If the Property is a used vehicle: The information I see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. (La Informacion que aparece en la ventanilla de este vehiculo forma parte de este contrato. La Informacion contenida en el formulario de la ventanilla anula cualquier previsión que establezca lo contrario y que aparezca en el contrato de venta.)

| Model Yr. | Make & Model | Body Type | Color | Odometer | Vehicle Identification No. | St. & Lic. No. | New/Used | No. Cyls. |
|---|---|---|---|---|---|---|---|---|
| 2022 | TOYOTA COROLLA | HYBRID L | Celes | 10 | JTDEAMDE9NJ055399 | N/A | NEW | N/A |

Use for which purchased: XX Personal  ☐ Commercial  ☐ Agricultural

**Insurance and Protection.** If any insurance or protection is checked below, the policies or certificates issued by the Companies named will describe the terms and conditions.

Optional Insurance. Credit life insurance, credit disability insurance and other optional insurance are not required to obtain credit and will not be provided unless I sign for them and agree to pay the additional cost. If I have chosen this insurance, the cost is shown in 4a of the Itemization below. Credit life insurance is based upon the payment schedule and the term of this contract. This insurance may not pay all I owe on this contract if I make late payments. Disability insurance covers the original payment amount for the term of this contract. If I make late payments, disability insurance will not pay all of my payments. The amount and coverages are shown in a notice or agreement given on this date.

☐ Credit Life (Buyer ☐ Co-Buyer ☐ Both ☐)  Term N/A  Premium $N/A  Insurer N/A  Insured N/A
☐ Credit Disability, Accident and Health (Buyer only) Term N/A  Premium $N/A  Insurer N/A  Insured N/A
☐ (Type of Other Insurance) N/A  Term N/A  Premium $N/A  Insurer N/A  Insured N/A

I want the insurance coverage(s) checked above, and I know that it is not required to obtain credit.

Buyer Signature  N/A   Date N/A
Co-Buyer Signature  N/A   Date N/A

**Required Physical Damage Insurance.** Physical damage insurance is required, but I may obtain it from anyone I choose. If purchased through you from the Insurance Company named below, the cost of this insurance, for the term shown immediately below, is shown in 4b of the Itemization below.

Insurance Company  N/A   Term N/A months
☐ $ N/A  Deductible Collision and either:
☐ Full Comprehensive Including Fire, Theft and Combined Additional Coverage
☐ $ N/A  Deductible Comprehensive Including Fire, Theft and Combined Additional Coverage
☐ Fire, Theft and Combined Additional Coverage

**Optional Gap Contract.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4e of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term N/A  Mos.
Name of Gap Contract N/A
I want to buy a gap contract.  Buyer Signs X N/A

**Optional Service Contract.** The cost of this contract is shown in 4c of the Itemization below.
Company N/A
Term N/A  $N/A  Deductible

**Optional Mechanical Breakdown Protection.** The cost of this protection is shown in 4d of the Itemization of Amount Financed.
Company N/A
Term N/A  $N/A  Deductible

Unless a charge for Liability Insurance is included in the itemization of amount financed, any insurance referred to in this contract does not include coverage for personal liability, bodily injury and property damage caused to others.

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Sale Price (Including any accessories) ........................................................... $ 26,732.00 (1)
2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below)
   a. Cash Downpayment ................................................................................... $ N/A
   b. Manufacturer's Rebate (If applicable) .............................................................. $ N/A
   c. Deferred Downpayment (Pickup Pymt), due N/A, on which there's no finance charge, of ............ $ N/A
   d. Trade-in: Value $ 5,000.00  Less owing $ N/A  Net $ 5,000.00 ................................... $ 5,000.00
      Description of Trade-in: 2013 SUBARU XV CROSSTREK  Lien Payoff To: N/A
   Total Downpayment (a+b+c+d) (also put this figure on the Downpayment line in the Total Sale Price box below) (Do not include 2d if negative) ..... $ 5,000.00 (2)
3. Unpaid Balance of Cash Sale Price (1-2) ................................................................ $ 20,732.00 (3)
4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf: (* Seller may be retaining a portion of this amount)
   a. Cost of Optional Insurance for the Term of this Contract paid to the Insurance Company(ies) named above.*
      Credit Life $ N/A  Credit Disability, Accident and Health $ N/A  Other $ N/A   $ N/A
   b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the Vehicle) * $ N/A
   c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * ........... $ N/A
   d. Cost of Optional Mechanical Breakdown Protection paid to the Company named above (covers certain repairs) * $ N/A
   e. Cost of Optional Gap Contract ........................................................................ $ N/A
   f. License / Registration Fees paid to government agencies ............................................ $ 92.26
   g. Title Fees paid to government agencies ............................................................... $ 42.00
   h. DEQ Certification fee paid to government agencies ................................................... $ N/A
   i. Title & Registration Processing Fee paid to Seller $ 148.00  Optional Electronic Filing Fee paid to Seller $ N/A  $ 148.00

| ☐ $ _____ Deductible Comprehensive (Including Fire, Theft and Combined Additional Coverage) | Amount of Insurance Financed |
|---|---|
| ☐ Fire, Theft and Combined Additional Coverage | Company: N/A |
| | Term: N/A $ N/A Deductible |

Unless a charge for Liability Insurance is included in the Itemization of amount financed, any Insurance referred to in this contract does not include coverage for personal liability, bodily injury and property damage caused to others.

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Sale Price (including any accessories) ............................................................. $ 26,732.00 (1)
2. Downpayment: (If 2d is negative, enter 0 at 2d and enter the negative amount in line 4k below)
   a. Cash Downpayment ........................................................................................ $ N/A
   b. Manufacturer's Rebate (if applicable) .............................................................. $ N/A
   c. Deferred Downpayment (Pickup Pymt), due ____N/A____ on which there's no finance charge, of ...... $ N/A
   d. Trade-In: Value $ 6,000.00 Less owing $ N/A Net $ 5,000.00 ................................. $ 5,000.00
      Description of Trade-In: 2013 SUBARU XV CROSSTREK Lien Payoff To: N/A
   Total Downpayment (a+b+c+d) (also put this figure on the Downpayment line in the Total Sale Price box below) (Do not include 2d if negative) ...... $ 5,000.00 (2)
3. Unpaid Balance of Cash Sale Price (1-2) ............................................................... $ 20,732.00 (3)
4. Charges other than Finance Charge, including Amounts Paid to Others on My Behalf. (* Seller may be retaining a portion of this amount)
   a. Cost of Optional Insurance for the Term of this Contract paid to the Insurance Company(ies) named above:*
      Credit Life $ N/A    Credit Disability, Accident and Health $ N/A    Other $ N/A    $ N/A
   b. Cost of required Physical Damage Insurance paid to the Insurance Company named above (covers damage to the vehicle) $ N/A
   c. Cost of Optional Service Contract paid to the Company named above (covers certain repairs) * ........ $ N/A
   d. Cost of Optional Mechanical Breakdown Protection paid to the Company named above (covers certain repairs) * .. $ N/A
   e. Cost of Optional Gap Contract* ............................................................................ $ N/A
   f. License / Registration Fees paid to government agencies ................................................. $ 92.25
   g. Title Fees paid to government agencies ................................................................... $ 42.00
   h. DEQ Certification fee paid to government agencies ....................................................... $ N/A
   i. Title & Registration Processing Fee paid to Seller $ 148.00 , Optional Electronic Filing Fee paid to Seller $ N/A $ 148.00
   j. Sales Tax / Excise Tax paid to government agencies ...................................................... $ 1,753.92
   k. Other Charges (Seller must identify who will receive payment and describe purpose - include negative trade equity here) *
      to LUNS AUTO CENTER INC    for CILAJET 1 YEAR    $ 299.00
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
      to N/A    for N/A    $ N/A
   Total Other Charges and Amounts Paid to Others on My Behalf * ............................................. $ 2,335.17 (4)
5. Amount Financed Principal Balance (3+4) * (also put this figure in the Amount Financed box below) ........ $ 23,067.17 (5)

**FEDERAL TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down-payment of $5,000.00 is |
|---|---|---|---|---|
| 3.95 % | $ 3,453.31 | $ 23,067.17 | $ 26,520.48 | $ 31,520.48 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| N/A | N/A | Due On N/A |
| 84 | 315.72 | Monthly Beginning 05/29/22 |
| N/A | N/A | Due On N/A |
| N/A | N/A | N/A |

Security: I am giving a security interest in the goods or property being purchased.

Late Charge. For each payment that is not paid within 10 days after its scheduled payment date, I will pay a late charge of 5% of the delinquent installment.

Prepayment. If I pay early, I will not have to pay a penalty.

See other contract provisions for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

Payments and Finance Charge Calculation. I will pay you the Total of Payments according to "My Payment Schedule" shown above. Any payment listed on the first line of the schedule is a deferred downpayment which does not bear a Finance Charge. The payments listed on the second line of the schedule are equal consecutive monthly payments which are due on the same day of each month, beginning on the date shown. However, the amount of the last payment will be adjusted to include a Finance Charge figured on the Principal Balance I owed, for the time I owed it. I will pay a Finance Charge on the Principal Balance outstanding each day at the Annual Percentage Rate. The Total of Payments and Finance Charge shown above assume I will pay exactly as agreed. If I pay late or less than the required payment, the Finance Charge is increased. If I pay early or more than the required payment, the Finance Charge is decreased. Changes may take the form of a larger or smaller final payment or, at your option, more or fewer payments of scheduled payments with a smaller final payment. My payments will be applied to earned and unpaid finance charges, principal, and other amounts I owe in any order you choose.

CONSUMER PAPER

NOTICE: The Creditor/Seller intends to sell this contract to (name and mailing address): Fibre Federal Credit Union PO Box 1234 Longview, WA 98632 , which if it buys the contract will become the owner of the contract and your creditor. After the sale of this contract, all questions concerning either terms of the contract or payments should be directed to the buyer of the contract at the address indicated above.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain Seller's right to receive part of the finance charge.

Sales Transaction Subject to Approval of Financing. The sale of the vehicle to you is subject to a third party lender's agreement to purchase this Retail Installment Contract (Contract) on the exact terms negotiated by the Dealer and the buyer. You agree to provide Dealer with all credit and income information reasonably required, and otherwise exert your best efforts to have the Contract purchased by a third party lender. In the event that a third party lender declines to purchase the Contract Dealer reserves the right to carry the Contract in-house or to declare its purchase null and void. The Dealer has 14 days from the date the buyer takes possession of the vehicle

| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |
| to | N/A | for | N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on My Behalf ............................................. $ 2,335.17 (4)

5. Amount Financed Principal Balance (3+4) (also put this figure in the Amount Financed box below) ......... $23,067.17 (5)

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my down-payment of $ 5000.00 is |
|---|---|---|---|---|
| 3.99 % | $ 3,453.31 | $ 23,067.17 | $ 26,520.48 | $ 31,520.48 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| N/A | N/A | Due On N/A |
| 84 | 315.72 | Monthly Beginning 05/29/22 |
| N/A | N/A | Due On N/A |
| N/A | N/A | N/A |

Security. I am giving a security interest in the goods or property being purchased.

Late Charge. For each payment that is not paid within 10 days after its scheduled payment date, I will pay a late charge of 5% of the delinquent installment.

Prepayment. If I pay early, I will not have to pay a penalty.

See other contract provisions for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

Payments and Finance Charge Calculation. I will pay you the Total of Payments according to "My Payment Schedule" shown above. Any payment listed on the first line of the schedule is a deferred downpayment which does not bear a Finance Charge. The payments listed on the second line of the schedule are equal consecutive monthly payments which are due on the same day of each month, beginning on the date shown. However, the amount of the last payment will be adjusted to include a Finance Charge figured on the Principal Balance I owed, for the time I owed it. I will pay a Finance Charge on the Principal Balance outstanding each day at the Annual Percentage Rate. The Total of Payments and Finance Charge shown above assume I will pay exactly as agreed. If I pay late or less than the required payment, the Finance Charge is increased. If I pay early or more than the required payment, the Finance Charge is decreased. Changes may take the form of a larger or smaller final payment or, at your option, more or fewer payments or scheduled payments with a smaller final payment. My payments will be applied to earned and unpaid finance charges, principal, and other amounts I owe in any order you choose.

**CONSUMER PAPER**

NOTICE: The Creditor/Seller intends to sell this contract to (name and mailing address): Fibre Federal Credit Union, PO Box 1234, Longview, WA 98632 , which if it buys the contract, will become the owner of the contract and your creditor. After the sale of this contract, all questions concerning either terms of the contract or payments should be directed to the buyer of the contract at the address indicated above.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain Seller's right to receive part of the finance charge.

Sales Transaction Subject to Approval of Financing. The sale of the vehicle to you is subject to a third party lender's agreement to purchase this Retail Installment Contract (Contract) on the exact terms negotiated by the Dealer and the buyer. You agree to provide Dealer with all credit and income information reasonably required, and otherwise exert your best efforts to have the Contract purchased by a third party lender. In the event that a third party lender declines to purchase the Contract, Dealer reserves the right to carry the Contract in-house or to declare the purchase null and void. The Dealer has 14 days from the date the buyer takes possession of the vehicle to sell this Contract and receive final approval of funding by a third party lender or to notify the buyer that the dealer will carry the Contract in-house.

Until purchase of this Contract and final approval of funding by a third party lender or notice that Dealer will carry this Contract in-house, you have no right, title and interest in the vehicle. Immediately, upon oral or written notice to you that the Dealer has declared the purchase null and void, you shall either (a) immediately tender in cash or cash equivalent, the unpaid purchase price of the vehicle; or (b) immediately return the vehicle to the Dealer. In the event you return the vehicle to the Dealer, Dealer shall return the trade-in vehicle, if any, and Dealer shall also refund all deposits and/or downpayments made by you to Dealer. You are responsible for the fair market value from damage to and excessive wear and tear on the vehicle or loss of the vehicle that occurs between the date the buyer takes possession of the vehicle and the date the buyer returns the vehicle to Dealer's custody. You shall be charged a reasonable per mile cost for the use of the motor vehicle. The fair market value of repairs or the lost vehicle may be set off by the Dealer against any deposit refund due to you. In the event that you fail or refuse to return the vehicle upon the Dealer's demand, Dealer shall have the rights of a secured creditor under ORS Chapter 79, including the right to self-help repossession. You acknowledge that Dealer has relied upon the representations made by you in your credit application in allowing you to take possession of the vehicle and in selling the vehicle to you. IF A THIRD PARTY LENDER OFFERS TO FINANCE THE VEHICLE ON TERMS OR CONDITIONS WHICH ARE DIFFERENT FROM THE TERMS AND CONDITIONS OF THIS CONTRACT, YOU MAY RESCIND THE TRANSACTION AND SHALL NOT BE REQUIRED TO SIGN A NEW CONTRACT UNLESS YOU ELECT TO PROCEED WITH THE SALE.

**NOTICE TO THE BUYER**

Do not sign this contract before you read it or if it contains any blank space, except that (1) if delivery of the motor vehicle or mobile home is to be made to you after this contract is signed, the serial number or other identifying information and the due date of the first installment may be filled in at the time of delivery; and (2) if the name of the financing agency is not known at the time the contract is executed, the name of the financing agency may be inserted in the contract on or about the date the name of the financing agency is known.

You're entitled to a copy of this contract. You have the right to pay in advance the full amount due and if you do so you may save a portion of the finance charge.

I consent to receive autodialed and/or pre-recorded telemarketing calls or text messages from or on behalf of LUMS AUTO CENTER INC. at ( 3 )861-1144 . I understand that consent is not a condition of purchase. Signature: _____

Returned Check Charge. I agree to pay a charge of $35.00 if any check or electronic payment is returned unpaid.

The Undersigned acknowledges receipt of a completed copy of this contract and agrees to its terms, including those stated on the back of this contract.

**RETAIL INSTALLMENT CONTRACT**

Buyer Signs _____ Co-Buyer Signs _____

Other Owners - An Other Owner is a person whose name is on the title to the vehicle but does not have to pay the debt evidenced by this contract. The Other Owner hereby grants a security interest in the "Property" (as defined in this contract) to Creditor to secure payment of all amounts owed under this contract, and agrees to all the terms stated on the front and back of this contract, except that the Other Owner will not be personally liable for amounts owed to Creditor under this contract.

Other Owner signs here LUMS AUTO CENTER INC. Address _____ By _____ Title _____

Creditor Signs _____

OADA Form 300.9 (01/20) Simple Interest - OREGON ©Copyright OADA Services, Inc. (2006) All Rights Reserved
The printer makes no warranty, express or implied, as to content or fitness for purpose of this form. Consult your own legal counsel.

TRUTH-IN-LENDING COPY 1. GIVE TO BUYER PRIOR TO SIGNING.        ORIGINAL TO BANK

## TERMS AND CONDITIONS

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

*THE PRECEDING NOTICE APPLIES ONLY TO GOODS OR SERVICES OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD USE.*

1. **Collection Costs.** If I don't make any payment when due according to my payment schedule shown on page 1 on the front of this contract, I will pay you reasonable amounts permitted by law which you spend to collect what I owe or in trying to repossess or sell the Property. I will also pay lawyers' fees, as set by the court, including any for appeals, that are paid to or owed to lawyers who are not your salaried employees. I will pay $35.00 each time my check is returned unpaid by my bank.

2. **Ownership and Risk of Loss.** I agree to pay you all I owe under this contract even if the vehicle is damaged, destroyed or missing. I agree not to remove the vehicle from the United States or Canada or to sell, rent, lease or otherwise transfer any interest in the vehicle or this contract without your written permission. I agree not to expose the vehicle to misuse or confiscation. I will make sure your security interest (lien) on the vehicle is shown on its title. If you pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, I agree to repay the amount when you ask for it.

3. **Security Interest.** I am giving you a security interest in the Property being purchased and any accessories, equipment and replacement parts installed in the vehicle. The security interest also covers (1) insurance premiums and charges for service contracts returned to the Creditor (2) proceeds of any insurance policies or service contract on the vehicle and (3) proceeds of any insurance policies on my life or health which are financed in this contract. This secures payment of all amounts I owe on this contract and any renewal or extension of this contract. It also secures my other agreements in this contract.

4. **Insurance, Liens, and Upkeep.**
   4.1 I'll keep the Property insured by companies acceptable to you with collision and comprehensive insurance, and any other insurance you may require. The insurance policies will have your standard loss payable endorsement and I will deliver the policies to you. No one but you has a security interest or lien on the Property.
   4.2 I'll pay taxes and any debts that might become a lien on the Property, and will keep it free of security interests and liens, other than yours.
   4.3 I'll also keep the Property in good condition and repair.
   4.4 If any of the things agreed to in this Section 4 are not done, you may do them and charge me for the cost of doing so. I'll pay the cost of doing these things either on your demand, or as increased future payments or as an additional payment or payments at the end of the contract, with interest at the contract rate. Even if you do these things, my failure to do them will be a default under Section 8, and you may still use other rights you have based on the default.
   4.5 Optional Insurance or Service Contracts. This contract may contain charges for optional insurance or service contracts. If the vehicle is repossessed, I agree that you may claim benefits under these contracts and terminate them to obtain refunds for unearned charges.
   4.6 Insurance or Service Contract Charges Returned to you. If any charges for required insurance is returned to you, it may be credited to my account or used to buy similar insurance or insurance which covers only your interest in the vehicle. Any refund on optional insurance or service contracts obtained by you will be credited to my account. I will be notified of what is done. For purposes of the following Warning only, you/your refers to the Buyer and Co-Buyer.

**WARNING**

Unless you provide us (Creditor/Seller) with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

5. **Preference Payments.** Any monies you pay or rights you give up because of an asserted preference claim in my bankruptcy will become a part of the indebtedness owing under this contract and, at your option, will (a) be payable on demand, (b) be added to the balance of the contract and be apportioned among and be payable with any installment payments to become due during the remaining term of the contract, or (c) be payable as an additional payment or payments at the end of the contract with interest at the contract rate. Or, in the event of a loss of rights, substitute collateral or performance may be substituted in your sole discretion.

6. **Co-owners or Transfers.** If there are any co-owners of the Property, they are all signing this contract either as a Buyer or as an "Other Owner". I won't sell the Property, lease it, loan it, or give it away.

7. **Protecting Your Interests.** I'll do anything that may now or later be necessary to perfect and continue your security interest in the Property and I'll pay all filing fees and other fees and costs involved.

8. **Default.** It will be a default:
   8.1 If any payment on this contract isn't received when it is due;
   8.2 If I fail to keep any agreement I have made in this contract;
   8.3 If I die or become insolvent or bankrupt;
   8.4 If I have given you a false financial statement, or if I haven't told you the truth about my financial situation, or about my use of the Property;
   8.5 If any creditor tries, by legal process, to take money from any bank account I have or to take any money or property I may have coming from you;
   8.6 If any check or other instrument given as a down payment is dishonored;
   8.7 If any trade-in is subject to any lien other than the one shown on this contract, or the amount owing on it is more than the amount shown;
   8.8 If the Property is sold, leased, loaned, given away, or the Property is lost, stolen, damaged, destroyed, levied upon, seized or attached. If you are required to make any payment in order to release the Property from any levy, seizure or attachment, you may add the amount of such

8.3 You may require me to turn the Property over to you at any place you name that is reasonably convenient for both of us, and I will do it if you so demand. I agree that the location where I signed this contract is a reasonably convenient place for me.

8.4 You may take the Property from me without notice. As long as it does not cause a breach of the peace, you may enter any place where the Property is located to take it. You may also take any property that is not part of the Property, but that happens to be in or on the Property, and may hold such property in safekeeping for its owner for 30 days. If the owner doesn't claim such property, you may donate it to charity, or otherwise dispose of it without notice in any manner and on any terms you consider appropriate.

8.5 You may sell the Property and pay the amount received over and above lawful expenses on the debt evidenced by this contract. You will send me a written notice of sale at least fifteen days before selling the vehicle. If I do not redeem the vehicle by the date on the notice, you can sell it. You will use the net proceeds of the sale to pay all or part of my debt.

To the extent permitted by law, the net proceeds of sale will be figured this way: Any late charges and any charges for taking, storing, cleaning, advertising, towing, and/or selling the vehicle and any reasonable lawyers' fees and court costs will be subtracted from the selling price. If I owe you less than the net proceeds of sale, the difference is owed to me unless you are required to pay it to someone else. For example, you may be required to pay a lender who has given me a loan and also taken a security interest in the vehicle.

If I owe more than the net proceeds of the vehicle, I agree to pay you the amount I owe, when you ask for it.

If I do not pay the amount I owe when asked, I may also be charged interest at the same Percentage Rate applicable to this contract, not to exceed the highest lawful rate, until I pay off owe.

8.6 You will also have the rights of a secured party under the Oregon Uniform Commercial Code and other laws.

8.7 You may cancel the collision and comprehensive insurance required by subparagraph 4.1

10. **Assignment by Seller.** You may transfer your rights under this contract to anyone. If you transfer this contract, the person or entity to which the contract is assigned will have the security interest and the right to insist that I perform my agreements under this contract.

11. **No Assignment by Customer.** I will not assign any rights under this contract or sell the Property without your written consent. Any attempted assignment without such consent will be void. No assignment or sale will terminate or change my obligations in you under this contract.

12. **Waiver of Co-obligor's Rights.** I irrevocably waive, disclaim and relinquish all claims against any and all other obligated with me which I have or would otherwise have by virtue of payment of this contract or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

13. **Multiple Customers.** If I'm signing this contract with another person, I'll be jointly and individually obligated to pay the whole contract. You may require him, I say the whole contract without asking the other person to pay. I'll pay the contract even if you and the other person repeatedly agree to renew or extend it for any length of time, revise its terms, or release the security.

14. **Payments.** I will make payment at any address you specify and payment will not be considered made until received at that address. Any payment of less than the entire amount then due may be credited on the balance without waiving or curing any existing default.

15. **Prepayment.** I may prepay the unpaid balance of the Amount Financed in full or in part at any time without penalty. If I do so, I must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of payment.

16. **Consumer Paper.** If the Property is not consumer goods, this contract is not Consumer Paper and is not subject to Oregon Revised Statute Section 83.020, even though the word "Consumer Paper" are printed on this contract.

17. **Waiver and Use of Remedies.** My timely performance is necessary under this contract. Your waiver of any breach or failure to enforce any provision of this contract is not waiver of any subsequent breach. Your rights and remedies under this contract and under law are cumulative and may be used in any combination at any time or different times. I agree that you may release the Property or other security without affecting other rights and remedies.

18. **Change of Address.** I'll give you my new address in writing whenever I move. You may give me any notices by regular mail at the last address I have given you.

19. **Credit Information.** You are authorized to check my credit, employment, criminal records and histories and to answer questions and provide credit reporting agencies with information about your credit experience with me. I authorize any person or consumer reporting agency to complete and furnish to you any information it may have or obtain in response to your credit inquiries.

20. **Title Transfer Fee.** If I ask you to consent to a change of registered ownership of the Property and you do consent, I agree to pay you a reasonable fee for arranging the change as well as paying for filing fees or other fees paid to officials in connection with the change.

21. If the property collateral is released by you (secured party) for an agreed amount prior to maturity and which amount does not pay the amount due under the contract in full, I agree to continue regular monthly payments under the original terms of this agreement, unless agreed in writing to the contrary.

22. **Servicing and collection contacts.** I agree that you may try to contact me in writing, by email or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as law allows. I also agree that you may try to contact me in these ways at any address or telephone number I provide you, even if the telephone number is a cell phone number or contact results in a charge to me. This section applies to contacts for collection and servicing purposes only. It applies regardless of whether I consent to receive auto-dialed and/or prerecorded telephone calls or text messages as provided on the front of this contract.

23. **Contract addendum.** The front and back side of this contract are deemed pages 1 and 2 respectively, the front and back of any addenda attached to or incorporated by its terms into this contract are deemed paginated in continuing numerical order thereafter. Additionally, each such numbered page will also be deemed numbered in numerical sequence inclusive of all pages of the contract and any such addenda.

24. **Oregon Law Applies.** This contract will be governed by Oregon Law.

25. **WARRANTIES SELLER DISCLAIMS.** I understand that any warranties on the vehicle sold are those made by the manufacturer. I am purchasing the vehicle "as is" from you and you

...property... taken, seized or attached. If you are required to make any payment or order to release the Property from any levy, seizure or attachment, you may add the amount. If such payment to the principal balance which I then owe.

8.4 If you form a good faith belief that the prospect of my payment or performance is impaired.

9. **Your Rights After Default.** After a default you will have the following rights and may use any one or any combination of them at any time:

9.1 You may declare the entire contract balance immediately due and payable all at once, without notifying me.

9.2 You may sue for and recover from me the contract balance, and I will be liable for all reasonable collection costs, including reasonable lawyers' fees, at trial and on appeal, that are paid or owed to lawyers who are not your salaried employees.

...

25. **WARRANTIES SELLER DISCLAIMS.** I understand that any warranties on the vehicle are those made by the manufacturer. I am purchasing the vehicle "as is" from you and you are not offering any warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose of the vehicle. Except for the warranty of the manufacturer, if any, I assume entire risk as to the quality and performance of the vehicle, and if the vehicle proves defective after the purchase, I assume the entire cost of all necessary servicing or repair. I also understand that you will not be responsible for incidental or consequential damages arising from loss of use, loss of time, inconvenience or commercial loss.

26. **Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductible. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## REPURCHASE ASSIGNMENT

FOR VALUE RECEIVED, ☒ without recourse ☐ with recourse, except as provided herein and in any written agreement regarding purchase of contracts executed by Seller and Assignee and now in effect, Seller hereby endorses and assigns to ___FoBA Federal CU___ ("Assignee") this contract and all right, title and interest of Seller in and to the Property described in this contract.

Seller represents and warrants that this contract arose from the sale of the Property; that the title to the Property was at the time of sale vested in Seller free of all liens and encumbrances and that a security interest in the Property is now vested in Seller subject only to the right of Buyer and any Other Owner (hereafter collectively referred to as "Customer"); that the property is as represented to Customer by Seller; that this contract is valid and enforceable against Customer, and that there is unpaid the full amount represented as being owing on it, which amount is subject to no defense, set-off, or counterclaim whatsoever, or want of legal capacity on the part of Customer. Seller shall indemnify and hold harmless the Assignee against all claims and defenses, whether valid or invalid, relating to the Property or acts or omissions of Seller including, without limitation, any based on the Federal Consumer Credit Protection Act or other state or federal law.

As a partial consideration for the purchase of this contract by Assignee, Seller hereby agrees not to assert against Assignee any claim, lien or encumbrance which Seller now has or may hereafter have with respect to the Property.

This assignment shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of Seller.

If the Property described in this contract is of a type for which a certificate of title may be obtained, Seller agrees to perfect a security interest in the Property in favor of Assignee within twenty days of the date of this contract as shown on page one and to provide Assignee with a certificate of title showing Assignee as first priority security interest holder within 30 days of the date of this contract. If Seller fails to comply with the immediately preceding sentence, Seller will, immediately upon Assignee's demand, repurchase the contract for the amount owing on the contract, even if the Property is not repossessed or tendered to Seller.

Dated ___4/14/22___  ___Lums Auto Center___ By ___[signature]___ ___P of___
        (Type Firm Name)           (Seller)        (Title)

## ASSIGNMENT AND GUARANTY

FOR VALUE RECEIVED, the undersigned Seller hereby endorses and assigns to _____ ("Assignee") this contract and all monies to become due thereunder and also grants, bargains, sells and conveys to Assignee all of the right, title and interest of the Seller in and to the Property described in this contract.

In consideration of the purchase of this contract by Assignee, Seller guarantees the payment of the unpaid balance evidenced thereby and agrees to pay upon demand that unpaid balance if Buyer or any Other Owner (hereafter collectively referred to as "Customer") in this contract defaults in the performance of this contract, or if any of the warranties are found untrue. The undersigned warrants that Seller has title to this contract and has a valid security interest in the Property; that Seller has the right to make this assignment and transfer; that the Property is free from any liens or encumbrances; that this contract is valid and enforceable against Customer, and that there is unpaid on it the full amount represented as being owing on it, which amount is subject to no defense, set-off, or counterclaim whatsoever, or want of legal capacity on the part of Customer. Seller hereby consents that Assignee, or its successors or assigns, may, without notice to Seller, extend the time for payments under this contract, waive the performance of such terms and conditions of the contract as it may determine, and make any reasonable settlement under the contract without affecting or limiting Seller's liability as guarantor.

For the purpose of inducing Assignee to purchase this contract Seller submits the accompanying Customer's application which the Seller believes to be true, and declares that the contract arose from the bona fide sale of the Property described in this contract, and that the Property has been delivered into the possession of Customer. In further consideration of the purchase of the contract, Seller agrees that if the Property is returned by or repossessed from Customer, Assignee, its successors or assigns, may recover from Seller the balance due on the contract or may sell the Property, apply the proceeds on the balance due and recover any deficiency from Seller; in either of such events recovering also a reasonable attorney's fee and costs of suit and expense, if any, paid or incurred by Assignee in the repossession or sale, or both, of the Property. In the event of suit against Customer Seller guarantees, in addition, the payment of costs and reasonable attorneys' fees to Assignee, its successors and assigns, and in case suit or action is instituted upon this guaranty Seller promises to pay such sums as the court may adjudge reasonable as attorneys' fees in such suit or action, including any appeal. Seller shall indemnify and hold harmless Assignee against all claims and defenses, whether valid or invalid, relating to the Property or acts or omission of Seller including, without limitation, any based on the Federal Consumer Credit Protection Act or other state or federal law.

The terms of this Assignment and Guaranty shall be effective notwithstanding anything to the contrary contained in any of the provisions of the contract, Dealer Repurchase Agreement or other agreement executed in connection with it.

This Assignment and Guaranty shall inure to the benefit of and be binding upon Seller's heirs, executors, administrators, successors and assigns.

If the Property described in this contract is of a type for which a certificate of title may be obtained, Seller agrees to perfect a security interest in the Property in favor of Assignee within twenty days of the date of this contract as shown on page one and to provide Assignee with a certificate of title showing Assignee as first priority security interest holder within 30 days of the date of this contract. If Seller fails to comply with the immediately preceding sentence, Seller will, immediately upon Assignee's demand, repurchase the contract for the amount owing on the contract.

Dated _____  _____ By _____ _____
        (Type Firm Name)           (Seller)        (Title)

# STATE OF WASHINGTON
## Vehicle Certificate of Title

**Title Number:** 1038264032

| Vehicle Identification Number (VIN) | Year | Make | Model | Body style |
|---|---|---|---|---|
| JTDEAMDE9NJ055309 | 2022 | TOYT | COROLLA | SEDAN |

| Title Issue Date | Odometer Miles | Odometer Status | Fuel Type |
|---|---|---|---|
| 11-May-2022 | 10 | Actual mileage | Hybrid |

| Scale Weight | Gross Vehicle Weight Rating Code | Vehicle Color | Prior Title State | Prior Title Number |
|---|---|---|---|---|
| 2,850 | | GRY | | |

**Comments:** 23650/2022

**Brands:**

Sale price $ _____

Date of sale _____

Buyer: You must apply for title within 15 calendar days of acquiring the vehicle to avoid a penalty. Take this signed title to a vehicle/vessel licensing office with the appropriate fees.

Legal Owner: To release interest, sign below and give this title to the registered owner/transferee or to a vehicle licensing office with the proper fee within 10 days of satisfaction of the security interest, or you may be liable to the owner/transferee for penalties.

Seller: You must complete a Report of Sale and file it with the Department of Licensing within 5 business days of the sale. File at dol.wa.gov or at any vehicle licensing office or county auditor.

**Legal Owner**

FIBRE FEDERAL CREDIT UNION
PO BOX 1234
LONGVIEW WA 98632-7725

**Registered Owner**

RYAN LYNN RICKS
CARLY NICOLE FORD
577 24TH AVE
LONGVIEW WA 98632-1310

X _____ Date _____
Signature of first legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____
Signature of second legal owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

X _____ Date _____
Signature of registered owner releases all interest in the vehicle described above. If signing for a business, include business name, signature, and title.

I certify that the records of the Department of Licensing show the persons named hereon as registered owner and legal owner of the vehicle described.

*Teresa Berrigan*
Director, Department of Licensing

---

**Assignment by registered owner**

Federal regulation and state law require you to state the mileage when transferring ownership if the vehicle is less than 20 years old, unless exempt. Failure to complete this statement or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge, the odometer reading is ► _____ (no tenths) Transfer date ___/___/___
Odometer reading in miles

This reading is (check one): ☐ the actual mileage of the vehicle ☐ in excess of the mechanical limits ☐ not the actual mileage.

Signature of transferee/buyer
X _____

Signature of transferor/seller
X _____

PRINTED name of transferee/buyer _____

PRINTED name of transferor/seller _____

Address of transferee/buyer _____

Address of transferor/seller _____

Keep in a safe place. Any alteration or erasure voids this title.

TD-420-002 (R/1/21)

| | |
|---|---|
| Loan Balance: | 19,450.15 |
| Interest Date: | 08/15/2023 |
| Interest Rate: | 3.990 |
| Remaining Payment Count: | 70 |
| Standard Payment: | 315.72 |
| Next Payment Date: | 09/29/2023 |
| Final Payment: | 104.50 |
| Final Payment Date: | 06/29/2029 |
| Remaining Interest: | 2,439.03 |
| Remaining Payments: | 21,889.18 |